May I please the court? Counsel. Counsel. Your Honor, we're here this morning on three issues as it relates to this matter, whether the trial court correctly denied judgment and a request for a new trial when plaintiff failed to establish that the defendant acted under color of law, the submission of improper jury instruction, and a jury verdict based on passion and prejudice. Briefly the facts in this case include Ms. Lee was a resident of St. Charles Habilitation Center. Mr. Borders was employed by St. Charles Habilitation Center as a kitchen worker. On the day in question, Borders had sexual relations with Lee. When this event occurred, Borders had no authority over Lee, nor was Borders engaged in any of his job-related duties when the event occurred. Lee was subsequently treated by a therapist. Two weeks after her treatment, the therapist indicated that she was beginning to show signs of recovery. She was treated for approximately eight months. Lee had minor physical injuries, no loss of wages, and no medical expenses. The jury subsequently awarded Lee a $1 million verdict in compensatory damages and a $3 million verdict in punitive damages. Our first issue, as I stated earlier, Your Honors, is the color of law issue. It's our position that the facts in this case did not provide color of law, did not establish that Borders acted under color of law when the event occurred. He was on duty, correct? Yes, Your Honor. He was on duty. However, if you look at the case in D'Alembre v. D'Alembre, which is 635F7407, that defendant was also on duty when the event occurred. In this particular situation, I understand he worked in the kitchen, correct? Yes, ma'am. I'm guessing his responsibilities are food preparation, food distribution, those sorts of things? His responsibilities were to restock the shelves, to assist the cooks, and to deliver food. When this incident happened, he had just completed restocking the shelves, so he was done with his duties for that morning. He was still on duty, but he was actually in the process of going to the back of the kitchen where he was going to sit until his lunch duty started. During the process in which he engaged Ms. Lee, he was not in the process of doing anything related to his job responsibilities that he had vested in him by the state. What would be enough for someone with those kinds of responsibilities to be acting under color of state law in this kind of context? According to the law, Your Honor, the defendant would have to have been in the process of doing one of his job duties. For example, in this particular situation, what in your mind would be enough to say, okay, the same act against Ms. Lee, but in this particular context, what would be his duties? For example, Your Honor, if he refused to give Ms. Lee any food or anything until she agreed to succumb to his pressure to have sex with him, that in my mind would, or based on the law, would have been him acting under color of law, because then he would have been asserting his authority over her, and he would have been doing that in the process of what he was authorized to do. Because this event did not occur while Mr. Borders was in the process of exercising his authority, there's no nexus between Borders' performance of his job duties and his conduct. His duties or his station gave him the access to the plane. Yes, Your Honor, but once again, simply because he had access to the plane, that in and of itself does not make him fall under the color of law and acting under the color of law. But Your Honor, you may have seen in March 27th, we had a case called McGee v. Trustees of Hamlin, where our panel noted that in prior cases, the factors include whether the officer is on duty, yes, motivation, don't know how that cuts, whether the officer had access to the victim because of his position, whether the author threatened official conduct in the case. So what do we have in the way of case law where the only factor present, the only factors perhaps are on duty, and that gave the perpetrator access to the victim? I'm not sure I understand your question, Your Honor. This is different than Roe. Yes, sir. Yes, sir. Well, the relationship, the access to the relationship was there in Roe, but not the access at the moment of the offense. Yes, Your Honor. So what do we have in cases in any circuit where we have, where access without nexus is discussed? Well, Your Honor, if you look at the Delambre case. That's the police chief. Yes. And in that situation, he was at work. He was in uniform, and he engaged in an encounter with someone else there, but because he was not in the process of performing his duties as a police officer at the time, he was held not to be acting under color of law. Okay. Well, that's relevant. That's Fifth Circuit. Yes, sir. How about other, have you found any others where we have that situation where we have access on duty, which gave access, but no apparent nexus? Well, if you look at the Ottman v. City of Independence at 341 Fed Third 751, they had access, but the simple fact that the defendant was an employee and had access to each other did not establish that they were, that the defendant in that case was acting under color of law. In order for Borders, in order to find that Borders acted under color of state law, as I stated earlier, his conduct would have had to relate to the performance of his duties as a kitchen worker. In this situation, it did not, nor did, there was no evidence in this case that Borders used his position to exert any influence or authority over or control over Ms. Lee. There was no evidence that Lee reached out to Borders for anything related to the job duties. When she came into the kitchen area, she didn't come into the kitchen area for anything related to job duties, anything related to Borders' job duties. She came into the kitchen area simply looking for her friend. She happened to ask Borders if this friend was there, and Borders indicated that she was not. And then he went on to the back of the kitchen, at which time she followed him and the event occurred. And what's the evidence for why she followed him? Your Honor, there was no evidence as to why she specifically followed him. So there's no evidence in the record that she was following him for him to supply her with anything that he had access to within the kitchen or anything like that? No, Your Honor, there wasn't. There was evidence that Mr. Borders at one point asked her if she needed anything, and she specifically said that she did not. Would that have been within his role, his job description, if someone came into the kitchen asking for a snack or something in the kitchen supplies? There was no evidence that that specifically would have fallen under his job duties. When he testified what his job duties were, he testified that they were those three things. Because the activities that Borders pursued with Lee was within his own personal pursuit, his acts cannot fall under color of law, and therefore the plaintiffs failed to prove that Borders was acting under color of law when this incident occurred. The second issue in this case is whether the trial court erred in granting or in submitting jury instruction number eight to the jury. This was a jury instruction defining consent. In this case, the trial court submitted to the jury instruction eight, which permitted the jury to find Borders liable if Lee's mental incapacity was manifest to Borders. When the U.S. Supreme Court case versus Daniel B. Williams at 474 U.S. 327, the court held that negligent conduct by a state official cannot support a claim for due process. In this case, manifest means capable of being readily and instantly perceived, thus holding Borders liable if he failed to perceive that which he should have perceived, which is consistent with a negligence instruction that the defendant knew or should have known. In addition, the consent instruction was very confusing and conflicted with the battery instruction, which specifically required the jury to find for Borders if plaintiff consented by words or actions. Basically, we have the court submitting a jury instruction or two jury instructions that are in conflict with each other because they are allowing the jury to come to the conclusion that he negligently battered Ms. Lee and that he negligently violated her due process rights. The court makes clear in the U.S. Supreme Court Daniels versus Williams case that you cannot support a claim of due process on negligence theory. I'm confused by the interplay between this battery and the 1983. Did the jury pick and choose? Do we have a general verdict? No, Your Honor. The jury did not pick and choose, but that's what I'm saying. It's confusing. On one hand, he's defining consent as with the manifest language. Then, in another jury instruction, he's saying— If it's correct as to either tort, either the constitutional tort or the state tort, then you lose, don't you? I mean, if the verdict only needs to be sustained by one of them— But it's our position, Your Honor, that it's confusing. Because it was confusing, it was prejudicial to the defendant in this situation. Well, isn't that— I don't have to study the instructions, but the jury was instructed that battery requires consent. Right. The instruction, it instructed that they had to find that Lee either consented by words or conduct. That was the instruction, and that was a proper MAI instruction. We're not arguing that that was an improper instruction. That was a proper instruction. However, if you look at that in conjunction with the consent instruction, it's very confusing. Because the consent instruction defines consent as whether her mental incapacity was manifest to borders, which is more consistent with a negligent theory of knowing or should have known. Now, are you attacking the punitives as well as the compensatories? I thought from your main brief that you appeared to be focusing just on the compensatory. No, Your Honor. It's actually our brief. We attack both. It's our position that both awards, the compensatory award and the punitive award, were excessive and a product of prejudice. So it's not a constitutional attack on the punitive. No, Your Honor, it's not a constitutional attack. The lower courts cited, and we also cited in our brief, various other cases in which there were allegations of rape. In those particular cases, the jury verdicts were much less than the verdict in this case. If you look at Rogers v. City of Little Rock, Arkansas, Mathis v. Fries, and Amador v. Galbraith, both jury verdicts, the compensatory jury verdicts, ranged between $100,000 and $250,000. And in this case, it was $1 million. And we take the position that that was excessive in addition to the punitive damages. If you consider the recovery and the lack of medical expenses and the lack of lost wages and you attribute that to the punitive damages, it would be also excessive. And at this time, I'd like to reserve my time remaining for rebuttal. Thank you. Thank you. Mr. Rudman? May it please the Court, counsel. I'm going to shelve my oratory and answer your questions, Judge Kelly, specifically concerning the issue of the color of law. There are many things I would like to say, but I think important to say is what is in the record as opposed to what is in the statement of facts of the appellant. Important to note, what I'm about to read is the portions of the transcript, and what you must keep in mind is additionally Borders was trained in the use of force, force over patients, customers, such as Angela Lee. This is the, and then I wish to give you specific stipulations and admissions of Borders, where he has admitted to each and every element of a prima facie case for a constitutional injury of a violation of the bodily integrity of Angela Lee. The first is Eugene Riddle, a state investigator for the Department of Mental Health. We're referring to Exhibit 19, which is the Pledge of Commitment by all Department of Mental Health employees, including Borders. Question, and here we're at Volume 2, page 45, line 13. I want to talk to you about this section here. It says, I understand that all forms of restrictions, punishment, rough handling, or any physical, emotional, sexual, or financial abuse are strictly prohibited by law. Is that your understanding as an investigator and employee of the state? Answer, yes. Volume 2, page 46, and that's part of the training. So there is times when people can use appropriate force to restrict a person's movements. Is that correct? Answer at 21, that's correct. Is there any time that a person could use anal intercourse as a form of restricting a consumer's movements? No. What type of force would that be? I mean excessive, inappropriate. It's not appropriate, just not appropriate. There is no situation that that would be appropriate. In your training of all employees that you discussed. Are you going to get the evidence as to the events in question? Yes, I can transfer that. Stipulations, Volume 1, page 121. The district court's discussion, explanation of the color of law, this ruling is totally inadequate. And what you've done so far doesn't even begin to get the problem I have based upon the case law like that one. No reasonable state actor faced with the same or similar circumstances objectively without the benefit of hindsight would ever, ever have had the contact with Angela Lee, a person that he admits was in his care, custody, and control. Get to the events in question. The personal pursuit. There was no personal pursuit. There was what? Rice cakes. I will refer the court to the testimony of rice cakes, which was the official duties even under the appellant's analysis of his official duties. Rice cakes is a food supplement that he utilized and lured Angela Lee, a person who could not ever consent under the law. On the day in question. Question, Volume 3, page 94. And then I'll get specifically to rice cakes. Question to Albert Borders. Volume 3, page 94. On November 20, 2007, again, you were on duty when this assault happened with Angela Lee. Is that correct? Answer, yes. You were again in the care, custody, and control of the kitchen area, of the dietary area where this assault took place. Isn't that correct? Yes. Page, Volume 1, page 131. Wait, wait, what about rice cakes? I thought you were getting to something. Well, I'll shoot to rice cakes, Your Honor. I thought that was Volume 1. Page, Volume 1, page 138. Again, you had talked about Angela asking for some supplements. Isn't that correct? Answer, Line 6, her rice cakes. Her rice cakes, is that correct? Right. Line 22. Right, you talked about these supplements and rice cakes. Were the rice cakes and supplements in the dietary area in which you were heading towards where you had a seat? Answer, Line 25, correct. Page, Volume 1, page 140. But then you had a conversation about the supplements, correct? That was all while I was in the kitchen area. Right, but it was after the talk of supplements that she came back in the dietary area with you. Isn't that correct? Answer, correct. I need to say that again. Line 3, right. But it was right after the talk of the supplements that she came back into the dietary area with you. Isn't that correct? The answer is correct. In this case, Albert Borders admits that he was on the job within the scope of his authority and under the case law purported to act in the performance of his official duties. He had the care, custody, and control of that area and in terms of his training as use of force over Angela Lee, a person who was completely mentally incapacitated. What's the evidence of the use of force? Page, this is Albert Lee's testimony. I'm only going to refer to the record. And this is Volume 1, page 149. Now, again, I had already brought some testimony here about Eugene Riddle to talk about the use of force training that is in the record for all employees, including Albert Borders. Volume 1, page 141, line 15. Are you trained in the topics? You said 149, now you're saying 141. No, Judge, I apologize. I said Volume 1, page 149, line 15. Are you trained on the topics if somebody is mentally incapacitated or a patient, whether or not they can give consent or not for you for sexual relations? Answer, we had something in training. Question, line 19. In any part of your training or on-the-job training? Answer, it's just the topics that we had, we had was not to have sexual interactions with consumers on the job as far as, you know, basically just go ahead, do your job. That's what you were hired for. Question, and you were on the job. Answer, yes, sir. And was she a consumer? Yes, sir. Now, he at all times knew that this individual, unlike Roe. Nothing about that is the use of force for the incident. In terms of the use of force, his objective use of force against her was not reasonable. There was testimony in the record. What was the use of force other than the anal assault? There was testimony in the record that he grabbed her by the arm in the back and put her further in the area, disrobed her. That's what I was, where's that? That is in the record here. It is in volume one. And the exact page number will come to me in one second. But in terms of the coercion aspect of this too, additionally in volume three as to what he told her after the incident, which this jury had sufficient if not overwhelming evidence knowing that this interaction had taken place. Question, volume three, page 95. And you indicated as you testified on direct that you testified in these various statements because you had a motive to try to keep your job. Isn't that correct? Answer, yes. And, in fact, you lied throughout these various statements to protect your own interests. Isn't that correct? Answer, yes. In terms of his motivation, he stated on volume one, page 174, then you also indicate, so I let my other head take control. I mean, what is that, a head? What is a head? Line 23, line 22, my stuff. Question, your stuff, right. Your stuff, your penis, correct. But what is interesting, I said it took control today. Was it your penis who took control only that day? Yes, sir. Not Angela. Not Angela's body that took control that day. Is that right? Right. In the statements that she stated to Ms. Lutes, her testimony was consistent. Ms. Lutes testified how consistent it was despite some statement in the statement of facts that it was not. And so I wish to pose this question here. This is a person who is in a state facility. This is an employee on duty who has jobs just not feeding her, but in this case that was the case. He was feeding her. And this is a person who was very vulnerable and mentally incapacitated in a vulnerable position, and he knew that she was in a vulnerable position. He knew that she should not have any sexual contact, whatsoever, at all with her. And in the record, volume one, page 131, again, sir, you knew that Angela Lee was a consumer, a patient, someone who was a ward of the state who was institutionalized in St. Charles habilitation on November 20th, 2007. Isn't that correct? Answer, yes, sir. And volume one, page 147. In your view, what's the case that's closest in your favor on the color of law issue? Because of the egregious sexual contact. No, that's not. Brown versus Valley in terms of no official objectively faced with the same or similar circumstances would ever have taken the action he did without the benefit of hindsight. He had care, custody, and control over her in that kitchen area while on duty. She was a vulnerable person. Clearly, the actions is egregious sexual contact. Far beyond that, I would contend of Rogers. This is a mentally incapacitated person. A person, a state official, even when they misuse their powers, to answer your question, Judge, under Phillips v. Johnson case, West v. Atkins case, even when you overstep or misuse your authority, when you're acting or purporting to act as he did with rice cakes, with supplements to get her lured back there, that's what this reasonable jury deliberated and determined. You act under the color of law. So I think there's a multitude of cases in this circuit that support that. Johnson v. Phillips, West v. Atkins, U.S. v. Classic, Rogers versus City of Little Rock, Hager Bar versus City of Raymore, all stand for the prospect that you can deprive someone of their substantive due process rights by invading their bodily integrity. And that is the case law of this circuit. It makes complete and coherent sense. What does not make complete coherent sense is this dangerous notion of consent. Now, in relating to the jury instructions on this issue of consent to these other issues here, there was no confusion over jury instructions. In fact, I'll cite the record, volume three, line 13, and this is opposing counsel in terms of their objection with respect to the definition of consent. I'm sorry, that had to do with consent. This was the professional testimony of a doctor. The question is 18 to 21. This is Dr. Weinstein. So was there any shadow of doubt to a reasonable degree of certainty that she lacked the ability to consent to sexual contact? Answered no. That's what the jury heard as well. There was no objection of the definition of under the color of official law, volume three, page 99, no objection by counsel. What's your understanding of the word manifest? Obvious. Manifest is manifest. It's here. It's present. So there is no, I disagree with opposing counsel on the idea that it somehow suggests a negligent standard. Let me tell you what counsel said. Counsel said volume three, line 100. We don't know. We don't know that consent merits definition. It's clear in and of itself, but what the jury instruction that they offered was number 10. Let me tell you what number 10 says. Volume three, page 102. Your verdict must be for defendant borders of plaintiffs. Lee's battery claim against defendant borders. If you believe that plaintiff Lee by words or conduct consented to the acts of the defendant and the reasonable consequences thereof, this case had overwhelming evidence far beyond sufficient to demonstrate that Lee's bodily integrity was violated by borders clothed under his authority of the state. He disrobed Angela Lee, but he cannot remove the clothing under the official acts of law. This is nothing like row something done solely in the personal ambits. This is a person who knew that she could not consent. Lord her under the guise of his position told her not to tell her about anybody about it. I suggest that's coercive. There's no suggestion that this jury was not deliberative nor that the  And so I'll conclude with this question. And I thank you so much. What's your, what's the, what case is closest to $4 million in damages for comparable. Three million was punitive damages. Trouble double trouble and quadruple have all been held to be not consciously excessive. That's the constitutional standard. That's not the state law. Or the, or the 19 under the, all five factors of gore. These actions are so reprehensible and the damage caused the damage, the medical evidence. Wait, your time is up. I asked you for the case that you considered or cases that are closest. Most that most justify by reason of the award that was affirmed the $4 million here. Stafford neurological med and Andrew three Hossman EEOC. I would probably say versus converging that this measure of pain and suffering is best left to the sound discretion of the jury where these injuries are not easily calculated in light of the record that is before this court and the substantial medical injuries, which were even compounded. We know that we know the law. I want to know what cases you thought best supported your position. EEOCV converging your honor. Thank you. Okay. Is that cited? Yes. Oh, there it is. Okay. I got it. And that was related to the sound discretion of the jury for pain and suffering. A little over a minute. Thank you, your honor. I'd like to just direct, direct my attention to a few things that opposing council mentioned nowhere in the evidence. Does it indicate that miss Lee was lured back into the kitchen with the proposition of having rice cakes? That is absolutely nowhere in the record. There is absolutely nowhere in the record where Mr. Borders had care and control over list. Miss Lee council indicates that several times in his brief and while standing here, once again, that is nowhere in the record is nothing in the record that indicates that Mr. Borders knew that miss Lee could not consent to the interaction. And those are just a few things that plaintiff has, that council has stated in his record and before the court today, that's in the record that is not in the record at all. Basically your honor color of law, the argument boils down to whether the defendant acted or purported to act in the performance of his official duties. When the incident occurred, it is our position that he did not, he was not in the process of doing anything work related when he engaged with miss Lee. And as a result, the color of Lee, the color of law issue fails. Thank you. Your honor. Thank you. Counsel. Okay. This has been effectively briefed and argued. We'll take it under advisement.